EMMA PRIMM v. LATHA EUGENE KING AND HILDA WARD.

(Filed 10 December, 1958.)

**1. Automobiles § 41g—**

Evidence tending to show that the operator of a motor vehicle on the servient highway failed to stop before entering the intersection with the dominant highway is sufficient to take the issue of his negligence to the jury 'n a suit involving a collision at the intersection with an automobile traveling along the dominant highway.

**2. Automobiles § 27—**

Whether a speed within the statutory maximum is lawful on the part of a motorist traveling along a dominant highway approaching the intersection with a servient highway depends upon the circumstances, since under the provisions of G.S. 20-141(c) a motorist is required to decrease speed upon approaching a crossing or intersection when special hazards exist, and a motorist is required at all times to drive with due caution and circumspection and at a speed and in a manner so as not to endanger or be likely to endanger any person or property.

**3. Automobiles § 46—**

An instruction to the effect that a speed within the statutory maximum on the part of a motorist traveling along a dominant highway toward an intersection with a servient highway, would be lawful, is error, and such error is not cured by another portion of the charge which applies the common law rule of the prudent man without reference to the statute.

**4. Trial § 22a—**

Plaintiff is entitled to have the evidence on the entire record considered in the light most favorable to her, and she is entitled to the benefit of every reasonable inference to be drawn therefrom.

**5. Automobiles § 41g— Evidence that a motorist along dominant highway failed to use due care to avoid collision with motorist on servient highway held sufficient.**

Evidence tending to show that a motorist, traveling along the dominant highway at a speed of 65 miles per hour, with testimony on her part fixing her speed at not less than 40 or 45 miles per hour, saw a motorist approaching from her left along the servient highway at a very slow speed some 150 feet from the intersection, that she took her foot off the accelerator when she was about 250 feet from the intersection, did not apply her brakes until within 50 or 60 feet from the intersection, with some evidence that she did not do so until within 10 or 15 feet from the intersection, is sufficient to be submitted to the jury on the issue of such motorist's negligence.

**6. Automobiles § 17—**

A motorist traveling along the dominant highway does not have the absolute right of way in the sense that he is not bound to exercise due care toward approaching traffic along the servient highway, but remains

PRIMM v. KING.

under duty to drive at a speed no greater than is reasonable and prudent under the existing conditions, to keep his motor vehicle under control, to keep a reasonably careful lookout, and to take such action as an ordinarily prudent person would take to avoid collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered.

**7. Automobiles § 43—**

In this action by a passenger in an automobile, injured in a collision between the car in which she was riding, traveling along the dominant highway, and a car entering the intersection from a servient highway, the evidence *is held* sufficient to carry the case to the jury on the theory of concurrent negligence of both defendants.

**8. Automobiles § 46—**

Where the evidence discloses that a motorist traveling along the servient highway, upon which stop signs had been erected, entered an intersection with a dominant highway, an instruction to the effect that where two vehicles approach an intersection at the same time, both of them observing the law, the motorist first in the intersection has the right of way notwithstanding that one of the highways is a dominant highway, is error. G.S. 20-158(a).

**9. Automobiles § 17—**

A motorist traveling on a servient highway on which a stop sign has been erected may not lawfully enter an intersection with a dominant highway until he has stopped and observed the traffic on the dominant highway and determined in the exercise of due care that he may enter such intersection with reasonable assurance of safety to himself and others, but his failure to do so is not negligence or contributory negligence *per se* but is to be considered with other facts in the case upon the issue.

**10. Appeal and Error § 42—**

Ordinarily, when erroneous instructions are given in a charge, such error will not be cured although the court may have given correct instructions in other parts thereof, since it cannot be presumed that the jury was able to distinguish at which time the court was laying down the correct rule.

PARKER, J., not sitting.

APPEAL by defendants from *Pless, J.,* 16 January 1958 Regular Civil Term of MECKLENBURG.

This is a civil action instituted by the plaintiff, Emma Primm, on 14 February 1957, against the defendants, Latha Eugene King and Hilda Ward, to recover damages resulting from injuries sustained when the car owned and driven by Hilda Ward, in which the plaintiff was a guest passenger, collided with the automobile driven by the defendant King at the intersection of Wilmont Road and Steele Creek Road, in Mecklenburg County, near Charlotte, North Carolina, on 16 December 1956.

The plaintiff alleges the joint and concurrent negligence of the defendants as the proximate cause of the collision which resulted in serious and permanent injuries to her. Each defendant filed answer denying his or her own negligence and alleging that the collision was the result of the sole negligence of the other.

At the intersection where the collision occurred Wilmont Road runs approximately east and west, and Steele Creek Road runs approximately north and south. Hilda Ward was driving east on Wilmont Road. The defendant King was driving south on Steele Creek Road. There was a stop sign facing the defendant King as he approached the intersection from the north. The stop sign was located about 48 feet north of the intersection.

The plaintiff's evidence tends to show that the Ward car was being driven at a speed of not less than 65 miles per hour at the time the plaintiff first saw the King car and she was, at that time, about 250 feet from the intersection; that the King car was being driven at a speed of about 10 to 15 miles per hour and did not stop at the stop sign but continued into and across the intersection. The plaintiff testified that she said, "Look out, he is not going to stop"; that the defendant Ward took her foot off the accelerator but did not apply the brakes; that she turned her car to the right and the collision occurred off the intersection. The King car had gotten over Wilmont Road on to Steele Creek Road; and that the defendant Ward's car hit the King car about the front door; that her car traveled about 75 feet after it struck the King car; that there was nothing to obstruct the view of either Mrs. Ward or Mr. King as they entered the intersection.

On cross-examination this witness testified: "After we crossed the bridge, just across the bridge, I saw Mr. King's car coming out into the intersection. It was driving very slowly. * * * I saw the King car coming across the intersection when I estimated the car I was riding in was about 250 feet from the intersection."

The defendant King testified that he pulled up to within two or three feet of Wilmont Road and stopped; that he looked to his right and his left. "I looked to the right and it was clear, I did not see anything in sight. I looked to the left, there were two cars down the road about two blocks away and I immediately looked ahead and put my car in low gear and went across Wilmont Road, and when I got across the road, Mrs. Ward's car struck me in the right front side in the front door and front wheel. From the time I stopped until I was hit, I had traveled about 40 feet. Wilmont Road is 22 feet wide. * * * With reference to Wilmont Road at the time my car was hit, I was just off of Wilmont Road on the south side. I did not see the car that hit

my car, I did not know there was a car anywhere around me because I did not see anything in sight when I looked to the right. * * * As to how fast I was going across this intersection, I went across I imagine about 10 miles an hour."

The defendant Hilda Ward testified, "I was working at the Airport 77 Restaurant in December 1956. I worked there as a waitress along with Mrs. Primm. I was driving the auto that was involved, that is one of the cars in this wreck. * * * We had been working and were on our way home. * * * I was on Wilmont Road, going east. As you drive east on Wilmont Road there is a bridge some distance west of this intersection. In my opinion that bridge is about two-tenths of a mile from the intersection. As I passed that bridge and approached the intersection of Steele Creek Road and Wilmont Road, I was driving about 55 at the bridge. * * * Then as I came on down towards the intersection I was driving about 45. I saw the auto operated by Mr. King. * * * When I first saw his car, I could see the top of his car from 150 feet back, the embankment goes up a little. You can see the top of the car, I know the car approached very slow. When I first saw his car it was about 50 feet from the intersection. As I came on towards the intersection this other car approached the side of the street so slow, I just knew he was stopping and then I realized he was * * * not going to stop; to keep from hitting him in the side I go to my right, hoping that he would see me then and go to his left. When it first became apparent that he was not going to stop before entering the intersection, I was around 50 to 60 feet from the center of the street or the intersection. When I realized he was not going to stop, I applied my brakes and went to the right."

On cross-examination this witness testified that Mr. King was not driving more than 10 miles per hour; that when she first saw his car it was about 50 feet from the intersection; that from where she first saw it to the place of the collision it was about 75 feet. She further testified that when the policemen came to see her in the hospital after the accident she told them that the first time she saw the King car it was 150 feet from the intersection.

A member of the Mecklenburg County police who investigated the accident testified that an automobile approaching from the west on Wilmont Road could be seen from the intersection with Steele Creek Road as it came across the bridge, and that the distance from the east end of the bridge on Wilmont Road to the intersection with Steele Creek Road is 1,350 feet. The testimony of this witness tends to show that the defendant Ward's car left tire marks for 100 feet before the collision.

Issues of negligence and damages were answered in favor of the plaintiff and against both defendants.

From the judgment entered on the verdict both defendants appeal, assigning error.

*Henry L. Strickland for plaintiff.*
*Carswell & Justice for defendant King.*
*Helms, Mulliss, McMillan & Johnston for defendant Ward.*

DENNY, J. The defendant King assigns as error the refusal of the court below to grant his motion for judgment as of nonsuit made at the conclusion of all the evidence.

In our opinion, the evidence adduced in the trial below was sufficient to carry the case to the jury as to the defendant King, and we so hold.

Among other things, however, this defendant excepts to and assigns as error the following portion of the charge to the jury: "Incidentally, let me say here, ladies and gentlemen, there being no evidence as to what kind of zone or district this was, that the 55 miles an hour speed law would apply here, and that a speed under 55 miles an hour would not be in violation of the speed law, and one above that would be."

We think this instruction may have misled the jury in light of the fact that the collision involved in this case occurred at an intersection of highways.

G.S. 20-140 provides: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, * * *."

G.S. 20-141 further provides: "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonably prudent under the conditions then existing. (b) Except as otherwise provided in this chapter, it shall be unlawful to operate a vehicle in excess of the following speeds: 1. Twenty miles per hour in any business district; 2. Thirty-five miles per hour in any residential district; * * * 4. Fifty-five miles per hour in places other than those named in paragraphs 1 and 2 of this subsection for passenger cars, * * *. (c) The fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * when special hazard exists with respect to pedestrians or other traffic * * * and speed shall be decreased as may be necessary to avoid colliding with any person,

PRIMM *v.* KING.

vehicle or other conveyance on or entering the highway and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

In light of the provisions of the foregoing statutes it is clear that whether or not a speed of 55 miles an hour is lawful depends upon the circumstances at the time. These statutes provide that a motorist must at all times drive with due caution and circumspection and at a speed and in a manner so as not to endanger or be likely to endanger any person or property. At no time may a motorist lawfully drive at a speed greater than is reasonable and prudent under the conditions then existing.

Conceding that 55 miles per hour was the legal rate of speed on Wilmont Road, the defendant King was entitled to have the jury instructed that notwithstanding the fact that the speed of a vehicle may be lower than 55 miles per hour, "that shall not relieve the driver from the duty to decrease speed when approaching or crossing an intersection * * *, when special hazard exists with respect to pedestrians or other traffic * * * and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

The fact that the court in its charge stated and applied the common law rule of the prudent man is not sufficient to remedy the failure to explain and apply the applicable statutory provisions. The charge contained no reference to the applicable provisions of G.S. 20-141(c). *Barnes v. Teer,* 219 N.C. 823, 15 S.E. 2d 379; *Kolman v. Silbert,* 219 N.C. 134, 12 S.E. 2d 915; *Spencer v. Brown,* 214 N.C. 114, 198 S.E. 630; *Bowen v. Schnibben,* 184 N.C. 248, 114 S.E. 170.

For the reasons stated the defendant King is granted a new trial.

Appeal by defendant Ward.

This defendant also assigns as error the refusal of the court below to sustain her motion for judgment as of nonsuit. She is relying upon *Edwards v. Vaughn,* 238 N.C. 89, 76 S.E. 2d 359; *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111; *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239, and similar cases.

In many instances it is a difficult task to determine whether or not a case falls within and should be governed by one line or another of our decisions. We think, however, the evidence in this case is sufficient to take it out of the line of cases cited and relied upon by this defendant.

The plaintiff is entitled to have the evidence on the entire record considered in the light most favorable to her and she is likewise entitled to the benefit of every reasonable inference to be drawn therefrom. *Pascal v. Transit Co.,* 229 N.C. 435, 50 S.E. 2d 534; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Thomas v. Motor Lines,* 230 N.C. 122, 52 S.E. 2d 377; *Winfield v. Smith,* 230 N.C. 392, 53 S.E. 2d 251.

As we interpret the testimony of the defendant Ward, she admits that she saw the top of her co-defendant's car for 150 feet as it approached but before it entered the intersection. She further testified that King was not driving over 10 miles per hour, and she never fixed her own speed at less than 40 or 45 miles per hour, while the plaintiff's testimony fixed her speed at 65 miles per hour before she took her foot off the accelerator when she was about 250 feet from the intersection. Moreover, the plaintiff testified, "I saw the King car coming across the intersection when the car I was riding in was about 250 feet from the intersection."

The defendant Ward does not contend that she made any effort to slow down other than to remove her foot from the accelerator until she was within 50 or 60 feet of the intersection. There is some evidence tending to show that after the accident the defendant Ward stated she did not apply her brakes until she was within 10 or 15 feet of the intersection. On the other hand, the testimony of one of her witnesses tends to show that skid marks led back from the Ward car from the point of impact for approximately 100 feet.

In *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373, *Johnson, J.,* in speaking for the Court, said: " * * * the driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway. It is his duty, notwithstanding his favored position, to observe ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon him in approaching and traversing such an intersection (1) to drive at a speed no greater than is reasonable and prudent under the conditions then existing, (2) to keep his motor vehicle under control, (3) to keep a reasonably careful lookout, and (4) to take such action as an ordinarily prudent person would take in avoiding collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered."

In light of the facts disclosed on this record, we conclude that the evidence against this defendant is sufficient to carry the case to

the jury on the theory of concurrent negligence of both the defendants. *Blalock v. Hart, supra, and cited* cases.

The defendant Ward also assigns as error the following portions of the charge to the jury: "Now, there is also in the law, ladies and gentlemen, a provision to the effect that where two vehicles approach an intersection at the same time, both of them observing the law, then the person that gets in the right of way first has the right of way, and it is up to the other one to yield to him. * * *

"On the other hand, a person, regardless of previous conditions, a dominant highway being on the left or right, etc., a person who first enters an intersection then has the right to proceed through that intersection, without interference and to that extent he has the right of way."

The above instructions are obviously erroneous. The law with respect to entering an intersection under the circumstances pointed out in the first portion of the charge, to which this defendant excepted, is set forth in G.S. 20-155 as follows: "(a) When two vehicles approach or enter an intersection and/or junction at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in G.S. 20-156 and except where the vehicle on the right is required to stop by a sign erected pursuant to the provisions of G.S. 20-158 * * *."

Likewise, as to the second portion of the charge to which this defendant excepted, G.S. 20-158 provides: "(a) The State Highway Commission, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto and yield the right of way to vehicles operating on the designated main traveled or through highway and approaching said intersection. No failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence. * * * "

Therefore, a motorist traveling on a servient highway on which a stop sign has been erected at an intersection with a dominant highway may not lawfully enter such intersection until he has stopped and observed the traffic on the dominant highway and determined

in the exercise of due care that he may enter such intersection with reasonable assurance of safety to himself and others. The failure of a driver, however, on a servient highway, to stop before entering an intersection with a dominant highway is not to be considered contributory negligence *per se* but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether or not under all the facts and circumstances involved such driver was guilty of negligence or contributory negligence. *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Edwards v. Vaughn, supra; Morrisette v. Boone Co.,* 235 N.C. 162, 69 S.E. 2d 239; *Matheny v. Motor Lines, supra.*

Ordinarily, when erroneous instructions are given in a charge, such error will not be cured although the court may have given the correct instructions in other parts thereof. It cannot be presumed that the jury was able to distinguish at which time the court was laying down the correct rule. *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767; *Godwin v. Johnson Cotton Co.,* 238 N.C. 627, 78 S.E. 2d 772; *S. v. Ellerbe,* 223 N.C. 770, 28 S.E. 2d 519; *S. v. Floyd,* 220 N.C. 530, 17 S.E. 2d 658; *Rogers v. Construction Co.,* 214 N.C. 269, 199 S.E. 41.

There are other assignments of error which are not without merit; even so, we deem it unnecessary to discuss them since there must be a new trial and the additional errors complained of may not recur thereon.

As to the defendant King: New Trial.

As to the defendant Ward: New Trial.

PARKER, J., not sitting.