JOHN McMILLAN v. ELLA JOAN HORNE.

(Filed 27 March 1963.)

**1. Negligence § 10—**

The doctrine of last clear chance is applicable when both plaintiff and defendant have been negligent and the defendant has time, after the respective negligences have created the hazard, to avoid the injury.

**2. Automobiles §§ 33, 45—**

Evidence that plaintiff was attempting to cross a municipal street in heavy traffic, that the three southern lanes were for east-bound traffic and the one northern lane for west-bound traffic, and that plaintiff crossed the two southernmost lanes and stepped into the side of defendant's car which was traveling east in the third lane, *held* insufficient to support the submission of the issue of last clear chance to the jury, since the evidence fails to disclose that defendant had time after she could or should have discovered plaintiff's position of peril to have avoided the injury.

**3. Negligence § 30—**

Where the jury answers the issues of negligence, contributory negligence, and last clear chance in the affirmative, but it is determined on appeal that there is insufficient evidence to support the submission of the third issue to the jury, the third issue must be stricken and the cause remanded for judgment denying recovery.

Appeal by defendant from *Clarkson, J.*, October 15, 1962, Schedule "B" Civil Term, Mecklenburg Superior Court.

Civil action for damages allegedly caused by defendant's negligent operation of her automobile which ran over plaintiff, a pedestrian, as he attempted to cross East Fourth Street at its intersection with South Myers Street in the City of Charlotte.

The defendant, by answer, denied negligence and conditionally pleaded the contributory negligence of the plaintiff as one of the proximate causes of his injury. The plaintiff, by reply, denied any contributory negligence, but conditionally pleaded that the defendant had the last clear chance to avoid the injury after having discovered the perilous position he occupied in attempting to cross the intersection.

After both parties introduced evidence, the court submitted issues of (1) negligence, (2) contributory negligence, (3) last clear chance, and (4) damages. The defendant duly excepted to the issue of last clear chance upon the ground the evidence was insufficient to support it. The jury returned affirmative answers to the first three issues and fixed plaintiff's damages at $8,000.00. From the judgment in accordance with the verdict, the defendant appealed.

*Cansler & Lockhart by Eugene C. Hicks, III, for plaintiff, appellee.*
*Kennedy, Covington, Lobdell & Hickman, by Hugh L. Lobdell, Charles V. Tompkins, for defendant, appellant.*

Higgins, J.  The record in this case presents one vital and controlling question: Was the evidence sufficient to go to the jury on the third issue? Ordinarily the last clear chance involves the conduct of a defendant after his negligence and the plaintiff's contributory negligence have had their play, still leaving the defendant time and opportunity to avoid the injury notwithstanding what both parties have previously done, or failed to do. In essence, the issue is one of proximate cause.

In passing on the question here presented, Justice Ervin, in *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150, stated the rules by which the conduct of the parties must be judged: "Where an injured pedestrian who has been guilty of contributory negligence invokes

the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him." (citing 26 cases as authority.)

The evidence in the case, with a few inconsequential variations, is remarkably free from conflict. The accident occurred August 16, 1961, at approximately 5:20 p.m., at the intersection of East Fourth Street and South Myers street in the City of Charlotte. The weather was clear. The streets were dry. East Fourth Street was marked for four lanes of vehicular traffic—each lane ten feet in width. The north lane was designated always for traffic moving west. The south lane was designated always for traffic moving east. The Myers Street intersection is east of the main downtown business district and west of a thickly populated residential area. Consequently, in order to carry the volume of traffic to and from work, in the morning the two middle lanes of East Fourth Street carry only west-bound traffic. Likewise, in reverse order, the two middle lanes in the afternoon carry only east-bound taffic. Electric signals over the two middle lanes give notice of the directions in which they are open to traffic. At the time of the accident here involved, the three south lanes were open to east-bound traffic.

The plaintiff attempted to cross Fourth Street at its intersection. He stopped at the southwest corner of the intersection. "I looked twice to the left and twice to the right. I stepped down, the first time I looked to the right. And then I looked to the left. I had stepped off of the sidewalk and started into Fourth Street when I looked to the left. Then I came on out and looked to the right and saw one car coming from the right. I then looked again to the left the second time. When I looked to my left the second time, I was about at the middle line. . . . I still didn't see anything. Then I took a step or two and then I got

hit. I never did see the car at all. I don't know what part of the car and what part of me came together."

In assessing the value of the plaintiff's testimony, it must be observed that he looked twice in each direction and saw only a vehicle in the north lane going west. He did not see any vehicle approach from the left—not even the one that struck him. Numerous eye-witnesses, however, testified that traffic was heavy in all lanes. The defendant, at the time, was in the north lane for east-bound traffic. There was traffic in both lanes to the south also going east, and there was evidence of traffic both in front and behind her. There was no evidence of excessive speed. The actual point of impact was in the north lane for east-bound traffic near the crosswalk. After the impact the vehicle stopped before it cleared the intersection of Myers Street which was 20 or 25 feet wide.

Mrs. Robinson testified that she was riding in her husband's car in the lane east-bound. The defendant was in the lane to her left. "I recall there were cars in our lane in front . . . about the time of the accident . . . I saw the man hit the right side towards the back." Another witness testified the plaintiff stepped into the right side of defendant's vehicle. The only damage was a dent in the right fender near the middle and a dent in the hood near the windshield.

Mr. Hamlin Wade, an attorney, a witness for defendant, was attempting to enter the west-bound lane from a private drive just east of the intersection. He testified. "We were waiting to go into Fourth Street, . . . I glanced up . . . and saw this man come out from the south side of Fourth Street . . . I saw him step off the curb and walk out into the street. He had his head down. He didn't look . . . in either direction, and he was walking unsteadily. I saw cars pass by this man as he walked across the street. There was a heavy stream of traffic at the time. . . . I was particularly interested because I just didn't see how he got out there with cars passing by. . . . I observed the defendant's automobile come to a stop. The rear end was still slightly in the intersection."

Mr. James O. Cobb, another attorney in the car with Mr. Wade, testified: "I saw him for a few seconds before the collision, and during those few seconds he was staggering or walking unsteadily and that he had his head down. . . . was looking down at the ground or at his feet. . . . I never at any time saw him look to his right or to his left."

The evidence of the plaintiff and other witnesses, explanatory of and not in conflict with it, depicts this situation: The plaintiff looked in both directions twice. He only saw one vehicle. It was in the north lane, moving west. He saw nothing moving east. Mr. Wade and Mr. Cobb

testified to the stream of traffic in all lanes; and that the plaintiff kept his head down and did not look up. The defendant was in the third marked lane going east. It was her duty to keep her vehicle in that lane. She said she was especially attentive to conditions in her lane because she knew, that except in the after-work hours, that lane was for west-bound traffic only. She feared some motorist would be ignorant of that fact and meet her head-on in the lane. She did not see the plaintiff until he was in the act of colliding with her vehicle. This is understandable. The plaintiff approached from the south side of the street. The traffic in the two lanes to the south evidently cut off her view. There was positive evidence she did not actually see the plaintiff in time to avoid the accident. There is no evidence from which it may be inferred that by the exercise of ordinary care she could have discovered him in a place of danger with time and opportunity to avoid the injury. Negligence and contributory negligence were present in the case, as the jury found. Both continued to the moment of the impact, leaving neither time nor opportunity for the defendant to avoid the injury. She was boxed in not only by the adjoining lanes and their traffic, but also by the traffic front and back in her lane. The burden of the third issue was on the plaintiff. *Miller v. Motor Freight Corp.*, 218 N.C. 464, 11 S.E. 2d 300.

Barnhill, J., later C.J., said in *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 35 S.E. 2d 337: "Its application (last clear chance) is invoked only in the event it is made to appear that there was an appreciable interval of time between plaintiff's negligence and his injury during which the defendant by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence." (citing cases)

The trial court committed error in submitting the third issue. It will be stricken, leaving the issue of damages without support. The answer to that issue also will be stricken. The case is remanded to the Superior Court of Mecklenburg County where judgment will be entered denying recovery and dismissing the action.

Error and remanded.